

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| JOHN DABECK,<br>　　　Plaintiff,<br><br>vs.<br><br>WESCO INTERNATIONAL, INC., LARRY DEON ASHFORD, and LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br>　　　Defendants. | §<br>§<br>§<br>§ 　CIVIL ACTION NO. 0:23-2292-MGL<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO REALIGN THE PARTIES
AND GRANTING PLAINTIFF'S MOTION TO REMAND**

## I.   INTRODUCTION

Plaintiff John Dabeck (Dabeck) filed this lawsuit in the Fairfield County Court of Common Pleas against Defendants WESCO International, Inc. (WESCO), Larry Deon Ashford (Ashford), and Liberty Mutual Fire Insurance Company (Liberty Mutual).  "This is an action for declaratory judgment pursuant to the South Carolina Uniform Declaratory Judgments Act, § 15-53-10 *et al,* for the purposes of determining a question of actual controversy between the parties as [described below]."  Complaint ¶ 6.

With the consent of WESCO, Liberty Mutual subsequently removed the case to this Court on two alleged grounds: federal question jurisdiction, under 28 U.S.C. § 1131, and diversity jurisdiction, in accordance with 28 U.S.C. § 1332.  Liberty Mutual maintains "the consent of the

misaligned party, Ashford, is [unnecessary]." Notice of Removal at 4.  Given the Court's decision to remand rests on another basis, the Court will decline to consider this argument.

Pending before the Court are Liberty Mutual's motion to realign the parties and Dabeck's motion to remand.  Having carefully considered the motions, the responses, the reply, the notice of removal,  the parties' replies to the Court's interrogatories, the record, and the relevant law, it is the judgment of this Court Liberty Mutual's motion to realign the parties will be denied and Dabeck's motion to remand will be granted.

## II.     FACTUAL AND PROCEDURAL HISTORY

"Dabeck is a citizen and resident of Fairfield County, state of South Carolina."  Complaint ¶ 1. As per Dabeck's compalaint, "[u]pon intonation and belief, . . . WESCO . . . is a corporation organized under the laws of a state other than the State of South Carolina[,]" *id*. ¶ 2, "Ashford is a citizen and resident of Fairfield County, State of South Carolina[,]" *id*. ¶ 3,  and "Liberty Mutual . . . is a company incorporated under the laws of a state other than the State of South Carolina[,]" *id*. ¶ 4.  "The events giving rise to this dispute, a car wreck and the subsequent litigation, occurred in Fairfield County, state of South Carolina."  *Id*. ¶ 5.

"On or about January 7, 2021, [Dabeck] and . . . Ashford were involved in a motor vehicle incident in Fairfield County, State of South Carolina."  *Id*. ¶ 7.  "According to the accident report, . . . Ashford was driving an eighteen-wheeler owned by . . . WESCO."  *Id*. ¶ 8.  "Ashford was operating the eighteen-wheeler within the scope and course of his employment [with] . . .WESCO."  *Id*. ¶ 9.

Dabeck "filed suit in Fairfield County on or about June 25, 2021, against . . . Ashford." (the Underlying Action) *Id*. ¶ 10. He states he "served . . . Ashford on or about July 9, 2021." *Id*. ¶ 11. "On or about October 8, 2021, default was entered against Ashford for failure to respond to [Dabeck's] Complaint." *Id*. ¶ 12. "On or about April 4, 2022, a damages order was entered against . . . Ashford in the amount of $1,000,000.00." *Id*. ¶ 13.

Dabeck states, "[u]pon information and belief, at the time of the wreck[,] . . . WESCO was the named insured under . . . Liberty Mutual's Policy No. AS2-63 l-5 l0095-040. The policy also covered . . . Ashford." Complaint ¶ 14. Dabeck further states, '[u]pon information and belief, . . . Liberty Mutual's Policy covering . . . WESCO and . . . Ashford, included a MCS 90 endorsement in which . . . Liberty Mutual agreed to pay, within the limits of liability, any final judgment recovered against . . . Ashford or WESCO regardless of whether . . . Ashford provided notice to . . . Liberty Mutual of the lawsuit." *Id*. ¶ 15.

"However, . . . Liberty Mutual has refused to pay the judgment." *Id*. ¶ 16. "WESCO has also refused to pay the judgment, despite . . . Ashford acting in the scope of his employment with WESCO." *Id*. ¶ 17.

According to Liberty Mutual,

> [t]hroughout this entire time, [it] was unaware that the Underlying Action had been filed, that Ashford had been served, that Ashford was in default, and that an entry of default had been made by the court. [On] August 23, 2022, . . . [Dabeck's counsel] emailed [Liberty Mutual] a copy of the April 4, 2022 Order of Damages and demanded payment within [ten] days. [An] August 23, 2022[,] email to [Liberty Mutual] was the first actual notice that [it] received from any source of the existence of the Underlying Action, the service of the Amended Complaint on Ashford, the entry of default as to Ashford, the notice and holding of a damages hearing, and the entry of the default judgment and Order of Damages.

3

> [Liberty Mutual] promptly retained defense counsel to defend Ashford in the Underlying Action subject to [Liberty Mutual's] reservation of rights to disclaim or limit coverage in accordance with the Policy and South Carolina law. On September 2, 2022, defense counsel retained by [Liberty Mutual] to defend Ashford filed a Motion to Set Aside Entry of Default and Default Judgment. On September 12, 2022, Dabeck's counsel dismissed WESCO from the case without prejudice. . . . WESCO had never been served with the Summons and Complaint in the Underlying Action. On March 27, 2023, Ashford's Motion to Set Aside Entry of Default was denied.

Liberty Mutual's Motion to Realign the Parties at 3-4.

Ashford maintains, however, "[h]e reported the collision to WESCO. He was later sued and reported the lawsuit to WESCO as well as [Liberty Mutual]. Neither [Liberty Mutual] nor WESCO appeared or attempted to defend [him]. As a result, a default judgment was entered against . . . Ashford despite his pro se efforts to defend himself." Ashford's Response in Opposition to Liberty Mutual's Motion to Realign the Parties at 1.

In Dabeck's claim for declaratory relief, he states "Liberty Mutual's Policy provides liability coverage for the wreck because at all times relevant to the wreck, . . . Ashford and WESCO qualified as 'insureds' entitled to liability coverage under . . . Liberty Mutual's Policy." Complaint ¶ 19. Dabeck also contends "Liberty Mutual's MCS 90 provision preempts denial of coverage based on any condition, provision, stipulation, or limitation contained in the policy or MCS 90 endorsement or any other endorsement thereon, or violation thereof." *Id*. ¶ 20.

He further alleges "Liberty Mutual's policy affords liability coverage for [Dabeck's] losses in the underlying wreck, and . . . Liberty Mutual is obligated to pay the full coverage allotted under its MCS 90, or $1,000,000.00 towards the judgment obtained against . . . Ashford." *Id*. ¶ 23.

Dabeck failed to bring any direct claims against Ashford. His request for declaratory relief is directed only at Liberty Mutual and WESCO.

Ashford subsequently filed a counterclaim against Liberty Mutual and WESCO,

> seek[ing] a judgment of this [C]ourt awarding him his attorney's fees as a result of this lawsuit and for the breaches of contractual and common law as well as an order of this [C]ourt finding . . . Liberty Mutual . . . WESCO . . . have a duty to satisfy the judgments [that] have been entered against [Ashford] in the Court of Common Pleas.

Ashford's Amended Answer and Crossclaim ¶ 17.

As the Court already observed, after Dabeck filed this action in the Fairfield County Court of Common Pleas, Liberty Mutual removed the case to this Court. It subsequently filed a motion to realign the parties, Dabeck and Ashford each filed a response in opposition to the motion, and Liberty Mutual filed a reply in support.

Thereafter, Dabeck filed a motion to remand and Liberty Mutual and WESCO each individually filed a response in opposition to the motion. Dabeck neglected to file a reply.

After reviewing the parties' briefing, the Court filed a text order directing the parties to file a joint reply to the Court's interrogatories on the issue of whether the Court has federal question jurisdiction over this matter and, if it does, whether Liberty Mutual's motion to realign the parties would be deemed as moot. Nevertheless, even though the Court ordered the parties to file a joint reply, Liberty Mutual and WESCO filed a reply by themselves, without inclusion of the other parties' reply.

Dabeck then filed its reply to the order, noting that although "the [C]ourt required a 'joint reply[,]' . . . . Liberty Mutual and WESCO filed a joint reply without consideration of any other

5

party." Dabeck's Reply to October 24, 2023, Text Order at 1. Ashford also filed a reply to the Court's text order.

The Court, having now been briefed on all of the relevant issues, is prepared to adjudicate Liberty Mutual's motion to realign the parties and Dabeck's motion to remand.

### III.     LIBERTY MUTUAL'S MOTION TO REALIGN THE PARTIES

#### A.     *Standard of Review*

"Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who [are] defendants." *Indianapolis v. Chase Nat. Bank*, 314 U.S. 63, 69 (1941). "It is [the Supreme Court's] duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute." *Id*. (citation omitted) (internal quotation marks omitted).

The Fourth Circuit has adopted the principal purpose test, which is derived from *Indianapolis*, when determining whether it is appropriate to realign the parties in a particular lawsuit. *See Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 172 (4th Cir. 2018) ("In determining whether to realign the parties, this court employs the 'principal purpose' test[.]").

"Application of the principal purpose test entails two steps. First, the [C]ourt must determine the primary issue in the controversy. Next, the [C]ourt should align the parties according to their positions with respect to the primary issue." *United States Fidelity and Guar. Co. v. A & S Mfg. Co., Inc.*, 48 F.3d 131, 133 (4th Cir. 1995). "If the alignment differs from that in the complaint, the [C]ourt must determine whether complete diversity continues to exist." *Id*.

But "[f]acts forming the basis of realignment must exist at the time of filing the original suit." *Texas Pac. Coal & Oil Co. v. Mayfield*, 152 F.2d 956, 957 (5th Cir. 1946).

B.  **Discussion and Analysis**

   1.  *Whether the Court should realign the parties in the diversity jurisdiction context*

Liberty Mutual asks the Court to realign the parties so as to establish diversity jurisdiction. "Liberty Mutual . . . moves that . . . Ashford . . . be realigned as a [p]laintiff to reflect his actual position with respect to the primary issue in this case – whether [Liberty Mutual] is obligated under its insurance policy to indemnify Ashford for the $1,000,000 default judgment entered in the Fairfield County Court of Common Pleas in favor of . . . Dabeck." Liberty Mutual's Motion to Realign the Parties at 1.  According to Liberty Mutual, "when the parties in this action are realigned in accordance with the 'principal purpose' test, diversity jurisdiction exists." *Id*. at 5.  In other words, Liberty Mutual requests the Court to move Ashford from the defendant to the plaintiff side of the "vs." in this lawsuit.

   According to Liberty Mutual,

> Dabeck's position on this issue is clear – he seeks a declaration that would result in [Liberty Mutual] being liable for the full $1,000,000 default judgment.  Ashford's position is equally clear – he seeks an identical declaration so that he will not be liable for any portion of the judgment entered against him in the Underlying Action.  Ashford clearly states that this is his position in his Amended Answer and Crossclaim, even going so far as to consent to judgment against [Liberty Mutual] and WESCO and requesting . . . the [C]ourt enter an order finding . . . [Liberty Mutual] and WESCO have a duty to satisfy the judgment in the Underlying Action.

*Id*. at 7.

Although Dabeck and Ashford oppose the motion, neither party offers any substantive arguments as to the reason or reasons for their opposition. Liberty Mutual maintains this amounts to a concession to realign the parties. But, because the realignment of the parties concerns this Court's jurisdiction, this contention must fail inasmuch as "[s]ubject-matter jurisdiction cannot be conferred by the parties, nor can a [question concerning the Court's] subject-matter jurisdiction be waived by the parties." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F. 3d 385, 390 (4th Cir. 2004).

The Supreme Court has long held "the jurisdiction of the [C]ourt depends upon the state of things at the time of the action brought[.]" *Mollan v. Torrance*, 22 U.S. (9 Wheat) 537, 539 (1824). "This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *Grupo Dataflux v. Atlas Global Group*, L.P., 541 U.S. 567, 570–71 (2004). "It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." *Id*. at 571.

In the same manner, as to the question of federal question jurisdiction, the same time-of-filing principle applies such that "a defense or counterclaim that raises a federal question is not an adequate basis for § 1331 [removal] jurisdiction." *Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271, 279 (4th Cir. 2022).

Stated differently, "[f]ederal jurisdiction in [a] case attache[s] upon the filing of the original bill of complaint, and [is] not affected by the filing of the cross-bill or counterclaim." *Mayfield*, 152 F.2d at 957. Accordingly, "[t]he question of realignment, involving jurisdiction, must [also] be tested at the time of filing of the complaint." *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d

8

866, 871 (8th Cir. 1966). As such, and as the Court stated above, "[f]acts forming the basis of realignment must exist at the time of filing the original suit." *Mayfield*, 152 F.2d at 957.

Nevertheless, Liberty Mutual's sole basis for saying both Dabeck and Ashford are aligned is by referring to Ashford's crossclaim against Liberty Mutual and WESCO in which Ashford seeks "an order of this [C]ourt finding that Liberty Mutual Fire Insurance Company and WESCO International have a duty to satisfy the judgments which have been entered against them in the Court of Common Pleas." Ashford's Amended Answer and Crossclaim ¶ 17. Liberty Mutual fails to make any other contentions as to this issue whatsoever. Absent from Liberty Mutual's realignment argument are any "facts . . . [that] exist[ed] at the time of filing the original suit." *Mayfield*, 152 F.2d at 957.

Consequently, inasmuch as "[f]acts forming the basis of realignment [did not] exist at the time of filing the original suit[,]" *Id.*, the Court is unable to employ the principal purposes test. As such, it would be inappropriate for the Court to grant Liberty Mutual's motion to realign the parties so as to establish diversity jurisdiction based on Ashford's crossclaim.

An additional reason the Court will deny Liberty Mutual's motion to realign the parties to establish diversity jurisdiction is that the record lacks any arguments as to the presence of any jurisdictional gamesmanship in an effort to fraudulently fabricate diversity jurisdiction.. This conclusion points toward denial of the motion. *See Jackson*, 880 F.3d at 172-73 ("Because no party contends that this case involves an attempt to fraudulently manufacture diversity jurisdiction, [the Court] need not delve too deeply into the issue of realignment. In the absence of a compelling reason to apply principles of realignment outside their traditional domain, [the Fourth Circuit] affirm[ed] the district court's denial of [the movant's] motion to realign the parties.").

### 2. *Whether the Court should realign the parties in the federal question jurisdiction context*

Liberty Mutual also argues the Court ought to realign the parties in the federal question jurisdiction context. But, Liberty Mutual fails to provide any controlling precedent as to the propriety of that notion. And, although the Fourth Circuit has held it appropriate to employ the principal purpose test when considering whether to realign the parties in a diversity action, it has neglected to say what standard the Court should use in deciding whether to realign the parties in a federal question action.

The other obvious problem is that, here, if the Court realigned the parties as Liberty Mutual requests it to do in the federal question context, it would necessarily manufacture diversity jurisdiction.

All that said, as the Court holds below, it has neither diversity nor federal question jurisdiction. Thus, the Court is spared the task of deciding whether realignment in the federal question context is proper.

For all the reasons the Court has stated above, it will deny Liberty Mutual's motion to realign the parties.

## IV.     DABECK'S MOTION TO REMAND

### A     *Standard of Review*

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulachey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "Because removal

jurisdiction raises significant federalism concerns, [the Court] must strictly construe removal jurisdiction." *Id*. "If federal jurisdiction is doubtful, a remand is necessary." *Id*.

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). To remove to federal court, the defendant or defendants must file "a notice of removal. containing a short and plain statement of grounds for removal." *Id*. § 1446(a).

### B. Discussion and Analysis

#### 1. Whether the Court has diversity jurisdiction

In Dabeck's motion to remand, he argues, "[d]iversity is not complete. . . . Because [he] and . . . Ashford are both citizens and residents of South Carolina, jurisdiction is proper in state court." Dabeck's Motion to Remand at 3 (emphasis omiited).

According to Liberty Mutual, however, "[w]hether this case has been properly removed to this Court rests on the proper alignment of the parties. Once Ashford is properly aligned with Dabeck, diversity jurisdiction is clearly present." Liberty Mutual's Response at 5. WESCO also maintains "removal of the case to federal court was proper and realignment of the parties is appropriate[.]" WESCO's Response at 1.

But, as the Court held above, it would be inappropriate for the Court to realign the parties for the purpose of establishing diversity jurisdiction. Thus, Dabeck is correct: the Court lacks diversity jurisdiction over this matter.

#### 2. Whether the Court has federal question jurisdiction

Dabeck argues Liberty Mutual's "[r]emoving this case simply because federal mandates the Form MCS-90 ignores the specific South Carolina case law on minimum limits applicable for motor carriers. Federal jurisdiction in this case is doubtful and South Carolina's state courts should not be deprived of that jurisdiction. Remand is necessary." Dabeck's Motion to Remand at 3.

Liberty Mutual, on the other hand, states "this Court should deny Dabeck's [m]otion to [r]emand because the invocation of the MCS-90 endorsement by Dabeck raises a substantial federal question." Liberty Mutual's Response at 7. In WESCO's response, it merely adopts Liberty Mutual's arguments as its own.

Concerning the meaning of the Form MCS-90 endorsement, "[f]ederal regulations require interstate trucking companies to maintain insurance or another form of surety 'conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles.'" *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 870 (10th Cir. 2009) (quoting 49 C.F.R. § 387.301(a)). "To satisfy this insurance requirement, most interstate trucking companies obtain a specific endorsement to one or more of their insurance policies—the MCS–90 endorsement—which guarantees payment of minimum amounts, as set forth in the regulations, to an injured member of the public." *Id*.

"An MCS–90 endorsement is intended to 'eliminate[ ] the possibility of a denial of coverage by requiring the insurer to pay any final judgment recovered against the insured for negligence in the operation, maintenance, or use of motor vehicles subject to federal financial responsibility requirements, even though the accident vehicle is not listed in the policy.'" *Id*. (quoting 1 Auto. Liability Ins. 4th § 2:12 (2008)).

"The operation and effect of the MCS–90 endorsement is a matter of federal law." *Canal Ins. Co. v. Distrib. Services, Inc.*, 320 F.3d 488, 492 (4th Cir. 2003). Thus, at first blush, it appeared to the Court it had federal question jurisdiction over this matter. But, when a complaint invokes a federal issue, yet fails to plead a federal cause of action, "the mere presence of [the] federal issue . . . does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

The Section 1331 "provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (e.g., claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 ( 2005). But here, Dabeck pled a state declaratory judgment cause of action, which contains a federal issue concerning the MCS-90 endorsement, as opposed to pleading a cause of action created by federal law. In other words, there is a federal issue embedded in Dabeck's state cause of action.

Thus, as is applicable for the Court's consideration here where there is a federal issue imbedded in a state law cause of action, in addition to invoking federal question jurisdiction "by plaintiffs pleading a cause of action created by federal law[,] . . . . "[t]here is . . . another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, [the Supreme] Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id*. "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" *Id*.

When determining whether the Court has federal question jurisdiction over such a matter, "the question is, [a] does a state-law claim necessarily raise a stated federal issue, [b] actually disputed and [c] substantial, [d] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. at 314.

"Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Grable*, 545 U.S. at 313-14). It then necessarily follows that, if the removing party neglects to establish all four of these elements, the removal is unjustified under federal law.

"Federal jurisdiction is rarely established on this basis." *See Webb v. Fin. Ind. Reg. Auth., Inc.*, 889 F.3d 853, 860 (7th Cir. 2018). The Supreme Court has termed them a "special and small category" of cases. *Gunn*, 568 U.S. at 258.

As the Court stated earlier, the party who seeks removal bears the burden of establishing the existence of federal jurisdiction. *Mulachey*, 29 F.3d at151. Thus, although it is up to Liberty Mutual, the removing party, to establish the propriety of its removing this case, it failed to address the *Grable* factors. Its discussion is limited only to whether this case presents a substantial federal question.

Only Ashford addressed the four *Grable* factors, which he did in his reply to the Court's interrogatories. Thus, the Court will undertake its analysis of the *Grable* factors without the benefit of being fully briefed on their application to the facts of this case.

      a.     *Whether a federal issue is necessarily raised*

As the Court noted above, Dabeck alleges in his complaint that, "[u]pon information and belief, . . . Liberty Mutual's Policy covering . . . WESCO and . . . Ashford, included a MCS 90 endorsement in which . . . Liberty Mutual agreed to pay, within the limits of liability, any final judgment recovered against . . . Ashford or WESCO regardless of whether or not . . . Ashford provided notice to . . . Liberty Mutual of the lawsuit." Complaint ¶ 15.

Then, in his claim for declaratory relief, he states "Liberty Mutual's MCS 90 provision preempts denial of coverage based on any condition, provision, stipulation, or limitation contained in the policy or MCS90 endorsement or any other endorsement thereon, or violation thereof." *Id*. ¶ 20. He further alleges "Liberty Mutual is obligated to pay the full coverage allotted under its MCS 90, or $1,000,000.00 towards the judgment obtained against . . . Ashford." *Id*. ¶ 23(b).

As the Court already stated, "[t]he operation and effect of the MCS–90 endorsement is a matter of federal law[,]" *Canal*, 320 F.3d at 492. Thus, the Court easily concludes a federal issue has been raised in this lawsuit.

That said, although a federal issue is raised in Dabeck's complaint, as Liberty Mutual noted in its Reply in Support of its Motion to Realign the Parties, "the actual primary issue is whether coverage in this matter is properly denied/limited based on the lack of any notice to [Liberty Mutual] of the underlying lawsuit. Only if coverage is properly denied does the possible application of the MCS-90 come into play." Liberty Mutual's Reply in Support of its Motion to Realign the Parties at 4.

Thus, as Liberty Mutual admits, the Court might be kept from reaching the MCS-90 question whether the MCS-90 endorsement applies. Again, [o]nly if coverage is properly denied does the possible application of the MCS-90 come into play." *Id*.

15

### b. *Whether the federal issue is actually disputed*

The federal issue will be disputed, but "[o]nly if coverage is properly denied[,]" *id*.

### c. *Whether the federal issue is substantial*

Liberty Mutual argues "Dabeck rases a substantial federal question because the interpretation and application of the MCS-90 endorsement is a question of federal law." Liberty Mutual's Response in Opposition to Dabeck's Motion to Remand at 10. But, as the Court noted above, "the mere presence of [the] federal issue . . . does not automatically confer federal-question jurisdiction." *Merrell*, 478 U.S. at 813.

And, of course, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim necessarily raises a disputed federal issue[.]" *Gunn*, 568 U.S. at 260 (quotation marks omitted) (alteration marks omitted). "The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id*.

When deciding whether the federal issue is substantial, the Court considers these three things:

> First, a pure question of law is more likely to be a substantial federal question. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006). Second, a question that will control many other cases is more likely to be a substantial federal question. *Id*. Third, a question that the government has a strong interest in litigating in a federal forum is more likely to be a substantial federal question. *Grable*, 545 U.S. at 315–16.

*MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013).

Applying these three considerations to this case, first, there appears to be a dispute whether Liberty Mutual was aware of the presence of the Underlying Suit while it was pending before the state court. Above, the Court quoted Liberty Mutual's statement it "was unaware . . . the Underlying

16

Action had been filed, that Ashford had been served, that Ashford was in default, and that an entry of default had been made by the court." Liberty Mutual's Motion to Realign the Parties at 3.  But, as the Court also quoted above, Ashford maintains "[h]e reported the collision to WESCO.  He was later sued and reported the lawsuit to WESCO as well as [Liberty Mutual].  Neither [Liberty Mutual] nor WESCO appeared or attempted to defend Mr. Ashford.  As a result, a default judgment was entered against . . . Ashford despite his pro se efforts to defend himself." Ashford's Response in Opposition to Liberty Mutual's Motion to Realign the Parties at 1.  Thus, the Court is unable to say this case presents a pure question of law.

As to the second consideration, it seems highly unlikely the question presented here will control the outcome of many, if any, other cases.  And third, absent here is anything "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313.  Thus, the Court is unable to hold the federal issue presented here is substantial.

Although certainly not bound by any other district court's opinion on this matter, the Court is persuaded by the reasoning of the court in the Eastern District of Virginia when faced with the question of whether the presence of a MCS-90 Endorsement in the lawsuit was enough to invoke the court's federal question jurisdiction.  As per that court,

> Given that the Court may not reach the secondary issue of interpreting the MCS–90B Endorsement, its inclusion in the Complaint is not essential to the claim and does not support the exercise of federal-question jurisdiction.
>
> As well, it is not apparent that the claimed federal issue constitutes a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.  At its core, this case is about the interpretation of an insurance policy—an enterprise

17

> generally reserved for state courts. It just so happens that a supplement to the policy at issue is predicated on federal law. The MCS–90B Endorsement, however, does not present a challenging or unique issue of construction requiring the attention of a federal court. And, unlike *Grable*, this case does not present a pure issue of law that could be settled once and for all and thereafter would govern numerous cases. Finally, the presence of federal law in a case does not preclude a state court from disposing of the case, as state courts are competent to apply federal law, to the extent that it is relevant, and have done so when interpreting the MCS–90 Endorsement. Accordingly, the instant case can and should be heard in state court.
>
> In short, it takes more than a federal element to open the arising under door, and this case does not fit into that small category. Thus, the Complaint does not present a necessary federal question, and this Court lacks subject matter jurisdiction.

*Atl. Cas. Ins. Co. v. United Tours, Inc.*, No. 3:12-cv-680–HEH, 2013 WL 2389887, at *4-5 (E.D. Va. 2013) (citations omitted) (internal quotation marks omitted) (alteration marks omitted).

States courts have indeed handled cases involving an MCS-90 Endorsement. *See, e.g., McClurg v. Deaton*, 671 S.E.2d 87, 91 (S.C. Ct. App. 2008) ("[The owner of the truck involved in an accident] presented evidence that, based upon a federally mandated MCS–90 Endorsement contained in the applicable insurance policy, any noncooperation/late notice defense which might have been available due to [the] failure [of the owner of the truck's employee who was involved in the accident] to notify [the truck's owner] of the lawsuit could be completely eliminated, thereby leaving [the truck's owner] vulnerable to being responsible for the entire judgment."); *Heron v. Transp. Cas. Ins. Co*., 650 S.E.2d 699, 702 (Va. 2007) ("Regardless of the forces that have motivated the insurance industry to adopt the language of the MCS–90 endorsement, the question presented to us is a simple one of interpreting the plain language of a written contract. The MCS–90 is a part of a contract between insurer and insured.").

> ### d. *Whether the federal issue is capable of resolution in federal court without disrupting the federal-state balance approved by Congress*

Here, without the benefit of briefing on the issue by all the parties, the Court is left to surmise mostly on its own whether Congress would prefer cases of this and similar sort being decided by federal, rather than state, courts. This seems to be more about pragmatism than substantiality.

Thus, because, "[a]t its core, this case is about the interpretation of an insurance policy—an enterprise generally reserved for state courts. . . . [and] [t]he [MCS–90] Endorsement . . . does not present a challenging or unique issue of construction requiring the attention of a federal court[,]" *United Tours,* 2013 WL 2389887, at *5, the Court will decline Liberty Mutual's invitation to interpret its insurance policy and, if necessary, the MCS-90 Endorsement.

In sum, the Court concludes Liberty Mutual, as the removing party, failed to discharge its duty to show removal of this matter was proper inasmuch as it has neglected to establish the Court has either diversity or federal question jurisdiction over this matter. Thus, the Court will remand this case to state court.

### V.     CONCLUSION

Based on the foregoing discussion and analysis, Liberty Mutual's motion to realign the parties is **DENIED**, Dabeck's motion to remand is **GRANTED**, and this case is **REMANDED** to the Fairfield County Court of Common Pleas.

In the Notice of Removal, Liberty Mutual states: "[i]n the event any question arises as to the propriety of the removal of this matter, [it] requests the opportunity to present briefs and oral argument in support of their position that removal is proper." Notice of Removal at 5. It, however, is outside the custom and practice of this Court to grant such a request. Further, Liberty Mutual has failed to set forth any proper basis for granting the request. Accordingly. Liberty Mutual's request is **DENIED**.

**IT IS SO ORDERED**.

Signed this 16th day of November, 2023, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE